In the Matter of the Estate of
Arlen Dean Hines, Deceased,
HINES, *Respondent,*
*v.*
HINES, Appellant.
(CA 8052)
573 P2d 1260

Leeroy O. Ehlers, Pendleton, argued the cause for appellant. With him on the briefs was Fabre & Ehlers, Pendleton.

Alex M. Byler, Pendleton, argued the cause for respondent. With him on the brief were Peter H. Wells and Corey, Byler & Rew, Pendleton.

Before Schwab, Chief Judge, and Tanzer and Johnson, Judges.

TANZER, J.

## TANZER, J.

This is an appeal from an apportionment of the proceeds from the settlement of a wrongful death action. The apportionment was pursuant to ORS 30.040 as it existed at the time of decedent's death in 1973,[1] and the parties are decedent's parents, who separated from one another in 1969 after several years of marital discord. The father (appellant) contends that the trial court was mistaken in finding the mother (respondent) to be a dependent of the decedent under the former ORS 30.020 and that it erred in awarding all of the settlement proceeds to the mother and none to the father.

Decedent was killed on February 7, 1973, when a United States Navy aircraft crashed into the apartment house where he resided in Alameda, California. He was 24 years old, unmarried and childless. His mother, as personal representative of his estate, instituted a wrongful death action against the United States and recovered a $50,000 settlement. She then sought apportionment of the settlement proceeds. The trial court found that the mother was a dependent of the decedent, while the father had maintained only a very minimal relationship with him. Consequently, it awarded the mother the entire sum available for distribution to the beneficiaries.

Former ORS 30.020 provided that a personal representative may bring a wrongful death action "for the benefit of the surviving spouse and dependents and in case there is no surviving spouse or dependents, then for the benefit of the estate of the decedent."[2] Former

---

[1] The 1973 amendments to ORS 30.020 and 30.040 apply "to decedents dying on or after January 1, 1974." Oregon Laws 1973, ch 718, § 7.

[2] Former ORS 30.020 provided:

"When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the decedent, for the benefit of the surviving spouse and dependents and in case there is no surviving spouse or dependents, then for the benefit of the estate of the decedent, may maintain an action agains the wrongdoer, if the

ORS 30.040 provided for the apportionment of settlement proceeds among dependents according to "their respective expectancies of dependency."[3] If there are no dependents, the settlement proceeds go into the estate. Here, if the mother was decedent's dependent, the apportionment to her was correct. If not, the settlement proceeds must become part of his estate and pass by intestacy in equal shares to the mother and father under ORS 112.045.

The trial court found that the mother depended on payments from decedent to support herself and her younger children. As an alternative ground of dependency, the mother contends that all parents are dependents of their children as a matter of law for purposes of former ORS 30.020, and that, unlike the father, her respective expectancy of dependency entitled her to the entire recovery under former ORS 30.040. We consider the latter contention first.

No Oregon case has defined "dependent" for purposes of former ORS 30.020. The mother's argument for dependency as a matter of legal status is derived from *Jones v. Jones,* 270 Or 869, 530 P2d 34 (1974), and *Goheen v. General Motors Corp.,* 263 Or 145, 502 P2d 223 (1972). In *Goheen,* the court stated that only members of decedent's family could be dependents under former ORS 30.020. It did not hold, however,

decedent might have maintained an action, had he lived, against the wrongdoer for an injury done by the same act or omission. Such action shall be commenced within three years after the occurrence of the injury causing the death of the decedent, and in every such action such damages may be awarded as, in all the circumstances of the case, may be just, and will reasonably and fairly compensate the spouse, dependents or estate for the actual pecuniary loss, if any, to such spouse, dependents or estate and for all reasonable expenses paid or incurred for funeral, burial, doctor, hospital or nursing services for the decedent."

[3] Former ORS 30.040 provided:

"If settlement, with or without action, is effected and there is more than one dependent, the amount to be distributed to the dependents shall be apportioned among them in accordance with their respective expectancies of dependency as determined by the probate court of appointment by order entered in the matter of the estate."

[ 212 ]

that the family relationship itself established dependency. The mother looks to *Jones* for the proposition that the phrase "surviving spouse and dependents" has the same meaning as the phrase "surviving spouse, surviving children, surviving parents" which now appears in the statute as a result of the 1973 amendments, because the substitution was intended only to define more specifically the class of persons previously entitled to recover. The mother points to a statement by the sponsor of the amendments, footnoted in *Jones,* that the "bill makes it clear that a child is permitted to recover irrespective of dependency status," 270 Or at 873, n 6, and she asserts that a parent is similarly entitled to recover as a dependent under the former ORS 30.020 without regard to actual financial dependency.

The argument makes too much of too little. First, legislative history of the 1973 amendments is of dubious probative value in discerning the legislative intent in 1939 when it enacted former ORS 30.020.[4] Second, the court in *Jones* concluded that the 1939 Act was intended to allow decedent's spouse and children to recover as direct beneficiaries but was not intended to include as "dependents" persons whom the decedent had no legal obligation to support. 270 Or at 873. Read in its entirety, the statement by the proponent of the 1973 amendments supports this interpretation. A child's legal duty to support his or her parent does not arise solely from the legal relationship. It arises from the relationship plus an extrinsic factual requisite, that is that the parents are "poor and unable to work to maintain themselves." ORS 109.010.[5]

We hold that the status of being a parent to the decedent does not by itself establish dependency under

---

[4] Oregon Laws 1939, ch 466, § 1, p 916.

[5] ORS 109.010 provides:

"Parents are bound to maintain their children who are poor and unable to work to maintain themselves; and children are bound to maintain their parents in like circumstances."

the statute. Lacking specific definition from the legislature or Supreme Court, we assume that the legislature used "dependent" in its ordinary sense. Accordingly, we look to the ordinary meaning of the term "dependent" and to the purpose of the statutory scheme.

■ Webster's Third New International Dictionary defines "dependent" as "one relying on another for support." This definition is consistent with the apparent purpose of former ORS 30.020 and 30.040 of compensating members of decedent's family who are left needy because of the death of their source of support and with the contingent nature of a child's legal obligation to support his or her parent. The expectancies of other family members are the subject of the probate code, and their interests are determined by the law of inheritance. Therefore, we conclude that dependency in the present context requires both a specified familial relationship and actual support in the nature of financial contributions or valuable services[6] flowing from the decedent to the purported dependent.[7] Consequently, we must examine the evidence supporting respondent's assertion and the trial court's conclusion that decedent's mother was actually reliant on him for support. We review the facts de novo. *Carlton v. Wolf,* 21 Or App 476, 486, 535 P2d 119 (1975).

At the time of his death in Alameda, California, decedent was enrolled in an automotive body repair course and was receiving tuition and subsistence

---

[6] *See, Clement v. Cummings,* 212 Or 161, 172, 317 P2d 579 (1957): "Dependence can unquestionably be based upon services which have a pecuniary value and which look toward maintenance."

[7] In the context of workers' compensation, the Oregon Supreme Court has held:

"* * * In order for relatives to be dependents of an unmarried decedent they must be dependent in fact on his contributions in order to continue to live in comfort according to the manner of living of people in their class and condition of life * * *." *Paul et al. v. Industrial Acc. Com.,* 127 Or 599, 604, 272 P 267, 273 P 337 (1928).

payments from the Bureau of Indian Affairs. Previously, he had graduated from Pendleton High School and enlisted in the Army in 1968. He was stationed in Fort Lewis, Washington, and Germany until his discharge in October, 1970. He then returned to the Pendleton area and lived with his mother, brother, sister and three of his mother's grandchildren until he left for California in April, 1972. He was close to his mother but had not seen his father for several years before his death. Decedent was not regularly employed during this time although he worked on farms during the summer and fall.

■ The record is ambiguous as to the financial situations of respondent and decedent. The mother, in her brief, estimates her annual income as "not more than $5,800." Our review of the record suggests a slightly more modest figure.

Decedent's financial contributions to his family were irregular and were not precisely recorded. In 1970 he received $3,000 from the United States as compensation for the destruction of tribal fishing gounds and gave $800 to his mother. While he was in Germany he authorized her to cash war bonds whose value does not appear in the record and to use the proceeds for family purposes. After his discharge, while he was living with his mother and his siblings, he bought his mother a $100 coat and made occasional payments to her of up to $200. After moving to California to attend school he sent his mother $5 or $10 on two or three different occasions, some or perhaps most of which was repayment of a loan. During the period after 1970, the father had very little contact with decedent or other members of the family.

Despite the close mother-son relationship that appears in the record and our reluctance to allow a father who abandoned his family[8] to derive financial benefit

---

[8] Appellant's second assignment of error challenges the admissibility of evidence of the manner in which the father treated his family before the parents separated in 1969. Our disposition of the case makes it unnecessary to consider this contention.

from his son's death, the facts will not support a lawful conclusion that the mother was decedent's dependent at the time of his death. Decedent contributed almost nothing to her support in the ten months preceding his death. His payments in the two-and-a-half years when he resided with his family were less than the cost of his room and board. Although precise estimates are impossible on this record, his contributions on the average were certainly less than one-sixth of his mother's annual income. There is no evidence that her standard of living declined as a result of the death of her son.

Dependency does not necessarily require total financial support by one family member of another. Partial support may suffice. There is no mathematical test for the requisite proportion of support. Rather, the test should be a circumstantial one under the peculiar facts of each case. The payments must be sufficiently regular and substantial to support an inference that the purported dependent relied on decedent's contributions to maintain his or her standard of living. *See* Speiser, Recovery for Wrongful Death, § 3:34, 266-68 (2nd ed 1975). Decedent's contributions to respondent in this case were too small and irregular to meet this standard.

Respondent urges that decedent also provided her with social and emotional support. As the eldest son in a family whose father was absent from the home, pursuant to the particular customs and culture of the Umatilla tribe, he served as the male head of the family and thereby gave important nonfinancial support to his mother. Such support, to which the mother does not attach pecuniary value, is not the kind of dependence for which former ORS 30.020 and 30.040 provide compensation. The severance by death of a close mother-son relationship may be emotionally painful, but the cost is not necessarily financial. The apportionment procedure applies to the termination by wrongful death of the dependent's source of financial support or services of measurable value. Furthermore,

even were we to accept the mother's theory, decedent did not fulfill this familial role in the ten months preceding his death, when he lived in California.

■■ Since dependent died without a surviving spouse or dependents under former ORS 30.020, the proceeds from the settlement of the wrongful death action go to benefit his estate. He died intestate. Therefore, under ORS 112.045(2), his parents are to take equal shares of his net estate.

Reversed.